UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT D. THORNTON, *Pro Se*, | ) | Case No.: 1:10 CV 2233 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| VONAGE TELEPHONE SERVICES, INC., | ) | |
| | ) | |
| Defendant | ) | ORDER |

Plaintiff Robert D. Thornton, *Pro Se* ("Plaintiff" or "Thornton"), brings the instant action against Defendant, Vonage Telephone Services, Inc. ("Defendant"). Pending before the court is Defendant's Motion to Dismiss (ECF No. 6), Plaintiff's Motion to Correct Party's Name in Complaint (ECF No. 8), Plaintiff's Motion for Default Judgment (ECF No. 9), and Plaintiff's Motion to Submit Correct Name of Defendant Vonage America, Inc. (ECF No. 12). For the reasons stated herein, the court denies Plaintiff's Motion for Default Judgment, grants Defendant's Motion to Dismiss for lack of subject matter jurisdiction, grants Plaintiff's Motion to Submit Correct Name of Defendant Vonage America, Inc., and denies Plaintiff's Motion to Correct Party's Name in Complaint.

## I. FACTUAL BACKGROUND

Plaintiff alleges that on or about March 14, 2008, he contacted Defendant to obtain telephone and Internet services. (Compl. ¶ 5, ECF No. 1.) After Defendant had taken down his information,

such as name, address, city, state, phone number, and credit card number, Plaintiff contends an agent of Defendant explained how the program works and the requirements to receive its services. (*Id*.) Following this explanation, Plaintiff maintains that he was informed by Defendant's agent that he could not receive services from Defendant because he had an outstanding phone bill that had to be paid off before service could be provided. (*Id*. at ¶ 6.) Plaintiff states he was given a phone number to call in order to make arrangements to pay off the outstanding balance. (*Id*.) Once that had been done, he could call the Defendant again to obtain Internet and phone service. (*Id*.)

Plaintiff contends that, shortly after his denial of service, on or about March 14, 2008, Defendant took his credit card number, and without his consent, made an "illegal withdrawal" of $42.26. (*Id*. at ¶ 7.) Plaintiff maintains he contacted Defendant and informed an agent of Defendant that it had illegally withdrawn money from his credit card account, and demanded the money be placed back into his credit card account. (*Id*.) Plaintiff asserts that Defendant stated it would not return the money to the credit card account, but that he could transfer the money taken from his credit card account into another party's account, if he knew of someone who had an account with the Defendant. (*Id*. at ¶ 8.)

Plaintiff maintains that every time he would "pay on [his] credit card account that the defendants [sic] would make withdraws." (*Id*. at ¶ 9.) Plaintiff contends he had temporarily stopped making payments "assuming defendants would stopped [sic] into plaintiff's credit card account, but defendants continued on checking plaintiff's account and once plaintiff would make payments that defendants would withdraw money from the account of plaintiff, 'unauthorized.'" (*Id*.)

Once he resumed making payments on his credit card, Plaintiff asserts that he attempted to catch up on "back payments" from May to September of 2008. (*Id*. at ¶ 10.) Plaintiff states he made

- 2 -

a payment of $200 on August 9, 2008, and a payment of $150 on September 11, 2008. (*Id*.) Plaintiff contends that Defendant "went into plaintiff's credit card account 'three times' in September of 2008." (*Id*.) He maintains that Defendant took money from his account twice on September 6, 2008, one for $10.76, and the other one for $92.90. (*Id*.) Plaintiff states later that same month on September 13, 2008, Defendant charged his credit card account $30.90. (*Id*.)

Plaintiff asserts Defendant has been "illegally withdrawing from plaintiff's credit card account from March 14, 2008[] until September 13, 2008." (*Id*. at ¶ 11.) Plaintiff contends that his credit card has "become terminated" due to the continued "illegal withdrawing" from his credit card every time he made payments. (*Id*.) Because of these actions, Plaintiff maintains that he has refused to continue to make payments after his last payment on November 11, 2008, which has forced his credit card balance to become higher in "payments and interest rates than what the account balance should have been." (*Id*.)

Plaintiff states that, in August of 2008, he received a notice from the Defendant, informing him that his account had been placed in "[s]uspend status due to non-payment." (*Id*. at ¶ 12.) In December of 2008, he received the same notice, and "as a result, plaintiff has never had any telephone services with Vonage telephone services, nor does plaintiff have any services with Vonage to date." (*Id*.) Plaintiff further maintains that the money continues to be withdrawn from his credit card account by the Defendant every time he makes his payments on the credit card account and his balance "has now exceeded over $800.00 dollars owed causing plaintiff emotional mental anguish and stress as well as credit card account damages."[1] (*Id*.)

---

[1] Although Plaintiff maintains Defendant keeps withdrawing money from his credit card account every time he makes payments on the credit card account, the court notes that the credit card statement provided by Plaintiff indicates the account was

- 3 -

On October 1, 2010, Plaintiff filed the instant action against Defendant. Plaintiff alleges negligence, fraud, "telephone fraud," "fraud of inducement of misrepresentation," violation of the "unfair deceptive practice act," unjust enrichment, and a "claim under negligence, wanton, reckless, mental anguish and stress"[sic]. (Compl. ¶¶ 13-19.) Based on the facts alleged, Plaintiff contends he has been damaged in the total sum amount of $950,000. (*Id*. at ¶ 20.) He seeks $350,000 in compensatory damages, and $600, 000 in punitive damages. (*Id*. at ¶ 21.)

## II. LAW AND ANALYSIS

### A. *Pro Se* Pleadings

Plaintiff has filed the instant suit *pro se*. Pleadings drafted by *pro se* litigants are "held to a less stringent standard than those prepared by an attorney." *Urbina v. Thomas*, 270 F.3d 292, 295 (6th Cir. 2001) (citing *Cruz v. Beto*, 405 U.S. 319 (1972)). However, *pro se* litigants are given no further special treatment beyond this latitude afforded in their pleadings. The Supreme Court has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. U.S.*, 508 U.S. 106, 113 (1980). The Supreme Court further stated in *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980), "in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." Therefore, with the exception of the court giving Plaintiff greater leeway in the drafting of his pleadings, he will be given no further special treatment, especially as it relates to procedural requirements.

### B. Motions to Correct Name

Plaintiff has filed two motions to correct Defendant's name in the Complaint. Plaintiff filed

---

closed on March 24, 2009. (*See* Tribute credit card statement at 5, ECF No. 1-1.)

a Motion to Correct Party's Name in Complaint on November 19, 2010. (ECF No. 8.) He requests that the court change Defendant's name from its incorrect name of Vonage Telephone Services, Inc., to the correct name of Vonage Network LLC. (*Id*. at 2.) On December 7, 2010, Plaintiff filed a Motion to Submit Correct Name of Defendant Vonage America, Inc., seeking to again correct the name of the Defendant. (ECF No. 12.) Plaintiff requests that the Defendant's name be changed from Vonage Network LLC, to its correct name of Vonage America, Inc. (*Id*. at 1.) Defendant stated in its Opposition to Plaintiff's first Motion to correct its name that the correct entity to be named in this suit is in fact Vonage America, Inc. (Opp. at 1, ECF No. 11.) Accordingly, the court grants Plaintiff's Motion to Submit Correct Name of Defendant Vonage America, Inc. (ECF No. 12), and denies Plaintiff's Motion to Correct Party's Name in Complaint (ECF No. 8).

### C. Motion for Default Judgment

The entry of defaults and default judgments is governed by the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 55(a) states "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Federal Rules of Civil Procedure 12(a)(1)(A) requires a defendant to serve an answer "within twenty days after being served with the summons and complaint ...." Federal Rules of Civil Procedure 55(b)(2) provides for a party to apply to the court for a default judgment in cases that do not involve a sum that can be made certain by computation.

Plaintiff filed a Motion for a Default Judgment on November 19, 2010, pursuant to FED.R.CIV.P. 55, alleging Defendant has failed to plead or otherwise defend as required by the rules. (ECF No. 9.) Plaintiff contends that Defendant filed a Motion to Dismiss without "pleadings on the

- 5 -

complaint," and that Defendant's motion is a "summary judgment that by-passed civil procedures in response to admitting or denying each claim set forth in the complaint." (*Id.* at 2.) He requests a default judgment for these reasons, and because the Defendant's Motion for Extension of Time (ECF No. 5) was "solely [to] delay the civil procedure before this honorable court." (Mot. for Default Judgment at 3.)

Defendant's Motion for Extension of Time to Answer until 11/9/10 (ECF No. 5) was granted by the court on October 25, 2010. On November 9, 2010, Defendant filed its Motion to Dismiss. (ECF No. 6.) Defendant's filing of the Motion to Dismiss is an appropriate response to Plaintiff's complaint, and under FED.R.CIV.P. 12(a)(4), tolls the time period for it to file an answer. Rule 12(a)(4) states in pertinent part: "serving a motion under this rule alters these periods as follows: (A) if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action...." *Id*; *See also Wrenn v. Gould*, 816 F.3d 683 (Table), 1987 WL 36949, at *1 (6th Cir. Apr. 3, 1987) ("The district court properly denied plaintiff's motion [for partial summary judgment and/or default judgment] because Rule 12(a) clearly states that the time within which a defendant must file its answer is altered and extended where the same defendant moves to dismiss the case under Rule 12(b)(6)"). Defendant's Motion was filed within the time frame prescribed by the October 25, 2010 Order of the court. Under Rule 12(a)(4), Defendant is not required to file an Answer unless its Motion to Dismiss is denied. Therefore, Plaintiff's Motion for Default Judgment is denied.

### D. Motion to Dismiss

#### 1. Standard

Defendant is seeking dismissal of Plaintiff's Complaint pursuant to FED. R. CIV. P. 12(b)(1)

for lack of subject matter jurisdiction. When subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the party asserting jurisdiction bears the burden of establishing that subject matter jurisdiction exists. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). Rule 12(b)(1) motions to dismiss based upon subject matter jurisdiction generally consist of two types. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). Facial attacks to subject matter jurisdiction merely question the sufficiency of the pleadings, and courts should apply the Rule 12(b)(6) standard in considering them. *Id.* In such a case, courts should accept the allegations in the complaint as true and construe them in a light most favorable to the nonmoving party. *U.S. v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974)). Factual attacks, the second type of challenge to the court's subject matter jurisdiction, do not question the sufficiency of the pleading's allegations, but rather contest the factual predicate for subject matter jurisdiction. *Id.* In such a case, no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *Id.*; *Moir*, 895 F.2d at 269.

Plaintiff asserts this court has subject matter jurisdiction over this suit based on diversity jurisdiction, pursuant to "U.S.C.A., sec. 1331, sec. 1332 (A) 1." (Compl. ¶ 2.) Section 1331 is federal question jurisdiction, and gives district courts jurisdiction over all civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.SC. § 1331. None of the claims raised by Plaintiff rely on any federal statute or the Constitution, making federal question jurisdiction inapplicable.[2] Section 1332(a) provides: "(a) The district courts shall have original jurisdiction in

---

[2] The court notes that Plaintiff provides conflicting information on the jurisdictional basis. In Part II of the Civil Cover Sheet, Plaintiff identifies the basis of jurisdiction as diversity, but under Part VI and in his Complaint, indicates

all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between– (1) citizens of different states...." 28 U.S.C. 1332(a). Defendant agrees that it and Plaintiff are citizens of different states, but contends that Plaintiff cannot meet the $75,000 amount-in-controversy requirement based on the facts alleged. Defendant has therefore asserted a factual attack to the court's subject matter jurisdiction.

When a defendant challenges a court's subject matter jurisdiction on the basis that a plaintiff has not met the amount in controversy under 28 U.S.C. § 1332, a court should not dismiss the complaint "unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount." *Klepper v. First American Bank*, 916 F.2d 337, 340 (6th Cir.1990). "Legal certainty" does not mean absolute certainty; rather, "it is sufficient if there is a probability that the value of the matter in controversy exceeds the jurisdictional amount." *Olden v. LaFarge Corp.*, 203 F.R.D. 254 (E.D. Mich. 2001) (quoting *Jeffries v. Silvercup Bakers, Inc.,* 434 F.2d 310, 311-12 (7th Cir. 1970)). The court must examine the "facts as they exist when the complaint is filed." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989). The court is permitted to aggregate claims to determine if the jurisdictional requirement has been met. *See Klepper v. First Am. Bank*, 916 F.2d 337, 341 (6th Cir. 1990). A court may consider both compensatory and punitive damages to determine whether the jurisdictional amount has been met, unless recovery of punitive damages on the cause of action is barred by law. *See Wood v. Stark Tri-County Bldg*, *Trades Council*, 473 F.2d 272 (6th Cir. 1973). An "exaggerated or frivolous allegation of amount which is without foundation will not serve to provide jurisdiction." *Holzsager v. Warbuton*, 452 F.Supp. 1267, 1274 (D.N.J. 1978); *Ehrenfeld v. Webber*, 499 F. Supp. 1283, 1291 (D. Me. 1980).

---

diversity and federal question jurisdiction.

- 8 -

2. Calculating Amount in Controversy

a. Unjust Enrichment

Defendant argues that Plaintiff cannot meet the amount-in-controversy requirement, because as a matter of law, even in the aggregate, Plaintiff's claims do not exceed $75,000. One of Plaintiff's claims against Defendant is unjust enrichment. Defendant contends that by law, this claim will not satisfy the jurisdictional requirement. Unjust enrichment occurs when a person "has and retains money or benefits which in justice and equity belong to another." *Univ. Hosps. of Cleveland, Inc. v. Lynch*, 772 N.E.2d 105, 117 (2002) (citing *Hummel v. Hummel*, 14 N.E.2d 923, 926-27 (1938)). The remedy for unjust enrichment is restitution. *See Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (2005). The purpose of restitution "is not to compensate the plaintiff for any loss or damage suffered by him but to compensate him for the benefit he has conferred on the defendant." *Id.* (quoting *Hughes v. Oberholtzer*, 123 N.E.2d 393, 397 (1954)). The sum of the improper charges as alleged by Plaintiff in his Complaint is $176.82. Therefore, under this claim, the most Plaintiff can recover is the sum of the charges allegedly improperly charged by Defendant, $176.82. Accordingly, this claim fails to meet the amount-in-controversy requirement.

b. Negligence and Fraud-Based Claims

i. Compensatory Damages

Defendant also asserts Plaintiff's negligence and fraud-based claims do not meet the requirement either. Plaintiff seeks $350,000 in compensatory damages for "pain and suffering of the money illegally taken from plaintiff's credit card account." (Compl. ¶ 21.) Plaintiff does not identify the claims for which he is seeking pain and suffering, but for the sake of this Motion, the court will assume they are tied to his negligence and fraud-based claims.

Plaintiff cannot recover pain and suffering damages for his fraud-based claims because they are not available to him under Ohio law. Plaintiff's claims of pain and suffering are not related to any physical harm he suffered, but instead stem from the alleged "emotional and mental anguish and stress" he suffered from Defendant's alleged actions. (Compl. ¶¶ 12, 19, 21.) In order to recover for emotional damages without physical harm under Ohio law, the emotional injuries must be foreseeable, and must be severe and debilitating. *See Banford v. Aldrich Chem. Co.*, 932 N.E.2d 313, 318-321 (2010); *Doyle v. Fairfield Machine Co.*, 697 N.E.2d 667, 685-686 (Ohio App. 1997). The Ohio Supreme Court has stated, "[t]he emotional injury or distress must be beyond trifling mental disturbance, mere upset, or hurt feelings." *Banford*, 932 N.E.2d at 319. The Court has also stated, "serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Paugh v. Hanks*, 451 N.E.2d 759, 765 (1983). Additionally, the Ohio Supreme Court has provided a "non-exhaustive litany of some examples of serious emotional distress [which] should include traumatically induced neurosis, psychosis, chronic depression, or phobia." *Id*.

Plaintiff has not provided any facts or made any allegations to meet the severe and debilitating requirement in order to recover for emotional damages. Plaintiff asserts that the high credit card balance caused him "emotional mental anguish and stress," but neither alleges nor shows how this had a severe or debilitating effect on his life. (Compl. ¶ 12.) Additionally, there is a requirement that the injuries be foreseeable, which also cannot be met here, since it is unlikely that the Defendant would foresee severe emotional injuries resulting from $176.82 in improper credit card charges. Plaintiff's emotional injuries appear to be no more than "mere upset, or hurt feelings," which is not enough to meet the requirements for recovery under Ohio law. As the Ninth Circuit

stated in *Christenson v. Northwest Airlines, Inc.*, 633 F.2d 529, 530-31 (9th Cir. 1980), "[a] federal court should not and cannot adjudicate such minor claims" based on a plaintiff's anger. Therefore, Plaintiff cannot meet the jurisdictional requirement on this basis either, as he cannot collect $350,000 in compensatory damages for pain and suffering.

### ii. Punitive Damages

Plaintiff also cannot meet the amount-in-controversy requirement for his punitive damages claim. Section 2315.21(C)(1) of the Ohio Revised Code allows punitive damages in tort causes of actions only if "[t]he actions or omissions of that defendant demonstrate malice or aggravated or egregious fraud." Ohio law does not allow punitive damages to be recovered on negligence claims, only where there is deliberate wrongdoing. *Cabe v. Lunich*, 640 N.E.2d 159, 162-163 (1994). Punitive damages can be recovered on fraud claims, but only if the plaintiff can prove actual malice. *Charles R. Combs Trucking, Inc. v. Int'l Harvester Co.,* 466 N.E.2d 883, 888 (1984). The Ohio Supreme Court has indicated that one must show "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 512 N.E.2d 1174, 1176 (1987). The second category includes "wrongdoing [that] is particularly gross or egregious." *Atram v. Star Tool & Die Corp.*, 581 N.E.2d 1110, 1112 (1989).

Plaintiff is unable to recover punitive damages on his negligence claim since Ohio law does not allow such damages for negligence claims. Assuming, without deciding that Plaintiff can show Defendant's conduct was "particularly gross or egregious," he still would only be entitled to two times the amount of compensatory damages awarded. Ohio law states that a punitive damages award cannot exceed two times the amount of compensatory damages awarded. Ohio Revised Code

§ 2315.21(D)(2)(A). If Plaintiff prevailed and was awarded compensatory damages in the amount of $176.82, punitive damages could not exceed $353.64, making the total damages award to be $530.46. Therefore, even if he could recover punitive damages, Plaintiff still cannot meet the amount-in-controversy requirement in his punitive damages claim.

### c. Damages Under OCSPA

Defendant contends Plaintiff cannot recover enough to meet the amount-in-controversy requirement through his claim under the "Unfair Deceptive Practice Act." Though he provides no citation to any statute, the court assumes, for the sake of this Motion, that the claim is brought pursuant to the Ohio Consumer Sales Practices Act ("OCSPA"), since it is the only plausible claim that can be inferred from this description. (Mot. to Dismiss at 2, ECF No. 6.) Although Defendant maintains Plaintiff's claim under the OCSPA is time-barred by the two-year statute of limitations, Defendant states that even if Plaintiff could assert a claim under the OCSPA, his damages would be limited to approximately $5,200. Section 1345.09(A) of the Ohio Revised Code provides, "where the violation was an act prohibited by section 1345.02, 1345.03, or 1345.031 of the Revised Code, the consumer may, in an individual action, rescind the transaction or recover the consumer's actual economic damages plus an amount not exceeding five thousand dollars in noneconomic damages." The statute explains that "actual economic damages" mean "direct, incidental, or consequential pecuniary losses resulting from a violation of Chapter 45...." Ohio Rev. Code § 1345.09(G). The sum of the amounts Plaintiff alleges Defendant wrongfully charged his account is $176.82. If Plaintiff succeeded on his OCSPA claim, his damages would equal about $5,176.82, his actual economic damages of $176.82, plus the maximum of $5,000 in noneconomic damages. Therefore, as Defendant stated, he is limited to approximately $5,200 in damages.

Plaintiff may recover payments for interest charges and fees to his account that stem from the transactions at issue. From the statements provided, this appears to be less than a hundred dollars. His total damages at the time of filing, based on the information he has provided, appear to be no more than approximately $5,300, taking into account the interest and fees. Even assuming a more generous amount for interests and fees, such as a few hundred dollars, Plaintiff's claim still falls well below the jurisdictional amount of $75,000. Accordingly, Plaintiff also cannot meet the jurisdictional requirement through his OCSPA claim.

### 3. Plaintiff Cannot Meet Jurisdictional Requirement

Plaintiff cannot meet the amount-in-controversy requirement under 28 U.S.C. § 1332(a), even if all of his claims were aggregated. He can only recover $176.82 in restitution on his unjust enrichment claim. He cannot recover punitive damages on his negligence claim. If he were entitled to punitive damages on his fraud-based claims, the most he can collect is two times the amount of compensatory damages awarded, totaling approximately $353.64, and making the total damages award at most $530.46. If Plaintiff can assert a claim under the OCSPA, he can only recover approximately $5,300. The amount in controversy, therefore, falls well below the jurisdictional requirement of $75,000. Even accounting for additional recovery of interest and fees Plaintiff may have incurred, which based on the information provided, is at best no more than a few hundred dollars, Plaintiff is still unable to meet the jurisdictional requirement.

Plaintiff had the burden of proving he met the amount in controversy once it was contested. However, Plaintiff did not file a response to Defendant's Motion. Based on the facts alleged and the relevant caselaw, the court finds that, "it appears to a legal certainty that [Plaintiff] in good faith cannot claim the jurisdictional amount." *Klepper*, 916 F.2d at 340. Accordingly, this court lacks

subject matter jurisdiction, and the Complaint must be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Because the court finds it lacks jurisdiction, it need not consider the additional grounds raised by Defendant for relief.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 6) is granted for lack of subject matter jurisdiction, Plaintiff's Motion for Default Judgment (ECF No. 9) is denied, Plaintiff's Motion to Correct Party's Name in Complaint (ECF No. 8) is denied, and Plaintiff's Motion to Submit Correct Name of Defendant Vonage America, Inc. (ECF No. 12) is granted.

To be clear, the court is only indicating herein that it does not have jurisdiction because the jurisdictional amount requirement for diversity jurisdiction pursuant to 28 U.S.C. § 1332, has not been met, and thus, the court has made no ruling on the merits of Plaintiff's claims, which should have been brought in state court.

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

February 28, 2011